PEOPLE v HARTFORD

Docket No. 78725. Submitted January 7, 1987, at Detroit. Decided April 20, 1987.

Michael E. Hartford was convicted of aiding and abetting second-degree murder and of being an accessory after the fact to the murder, Washtenaw Circuit Court, Ross W. Campbell, Jr., J. Defendant appealed.

The Court of Appeals *held:*

1. A person guilty of a substantive offense either as a principal or as an aider and abettor cannot also be guilty of being an accessory after the fact to the same crime.

2. The court did not err in instructing the jury that planning in advance to provide a felon with an escape is sufficient assistance to predicate finding a defendant guilty as an aider and abettor.

3. The prosecutor did not engage in conduct requiring reversal.

4. The court did not abuse its discretion in ruling that a prosecution witness was qualified as an expert on gunshot wounds.

5. Defendant was not denied effective assistance of counsel.

Affirmed as to defendant's conviction for aiding and abetting and vacated as to his conviction as an accessory after the fact.

1. CRIMINAL LAW — ACCESSORY AFTER THE FACT.

A person guilty of a substantive offense either as a principal or as an aider and abettor cannot also be guilty of being an accessory after the fact to the same crime.

2. CRIMINAL LAW — AIDING AND ABETTING — ACCESSORY AFTER THE FACT.

An aider and abettor knew about and intended to further the commission of the crime before it ended and did some act or

REFERENCES

Am Jur 2d, Criminal Law §§ 167-170, 174.

Am Jur 2d, Trial § 724.

See the annotations in the Index to Annotations under Accomplices; Aiding and Abetting.

gave some encouragement which helped in the commission; an accessory after the fact helped the person who committed the crime only after the crime had ended.

3. CRIMINAL LAW — AIDING AND ABETTING — ESCAPE.
    Planning in advance to provide a felon with an escape is sufficient assistance to predicate finding a defendant guilty as an aider and abettor.

*Frank J. Kelley,* Attorney General, *Louis J. Caruso,* Solicitor General, *William F. Delhey,* Prosecuting Attorney, and *David A. King,* First Assistant Prosecuting Attorney, for the people.

*Joseph W. Loney,* for defendant on appeal.

Before: CYNAR, P.J., and J. H. GILLIS and D. F. WALSH, JJ.

PER CURIAM. Defendant was convicted by a jury of aiding and abetting second-degree murder and of being an accessory after the fact to the murder of Paul Garrett, MCL 750.317; MSA 28.549 and MCL 750.505; MSA 28.773. Defendant was sentenced to a term of from twenty to sixty years for his conviction of second-degree murder, and from three years and five months to five years for his conviction of being an accessory after the fact. Defendant appeals both his convictions as of right.

The murder of Paul Garrett occurred on March 10, 1981. On October 29, 1983, following a two-year investigation by the Michigan State Police, defendant was charged in a two-count complaint with first-degree murder and being an accessory after the fact to murder. Defendant's trial took place from March 19 through March 29, 1984.

Trial testimony showed that defendant, Michael Smith and Paul Garrett were at a party in the late evening or early morning of March 9, 1981, at an Ypsilanti apartment house located at 219

North Adams Street. Deborah Rowland testified that Smith had asked her to call Garrett and invite him to the party that evening. Garrett arrived at the party around 1:00 A.M. after working a night shift at an area Big Boy restaurant. Defendant and Smith came to the party together, arriving before Garrett. Shortly after Garrett arrived, Rowland went to the upstairs apartment where Garrett was drinking and motioned from the door for Garrett to come and speak with her. Garrett got up and walked into the hall with Rowland.

A few minutes later loud noises were heard from the lawn, and people went outside to see what was going on. Witnesses testified that defendant, Smith, and Garrett were near defendant's car. Rowland was standing on the porch outside the apartment house. Mark Taylor, a seventeen-year-old at the party, testified that one of the two men was yelling at Garrett about money he owed him, but Taylor could not identify which man was yelling. Defendant was near his car, while Smith and Garrett were eight to ten feet apart, near the sidewalk in front of defendant's car. Witnesses testified that Smith went into the front seat of the car, took out a shotgun, and fired two shots at Garrett. Rowland's testimony indicated Garrett was shot while his back was towards Smith. Witness Charles Simmons testified that Garrett was shot while facing Smith. An autopsy of Garrett showed two wounds to the back and one to the chest. Following the shots, Smith placed Garrett in the back seat of defendant's car, and defendant along with Smith and Rowland drove off down Michigan Avenue to a rural farm area in Ypsilanti.

Rowland was the only person to testify about the event on Tuttle Hill Road, the rural area to

which the defendant drove. She stated that during the ride Paul Garrett was moving and asked her for help. The group arrived at Tuttle Hill Road, where Rowland stated that defendant held a shotgun and forced her to shoot Garrett in the chest. Rowland testified on the first day of trial that Smith had shot Garrett. However, she recanted this testimony during questioning, stating that she fired the shot to Garrett's chest after defendant helped hold the gun and forced her to shoot. Rowland's testimony, along with that of many of the other witnesses, was inconsistent with information she had given previously. In fact, the defense attorney used a blackboard to show thirteen different stories that Rowland had given to the police and various courts.

Garrett's body was discovered on the side of Tuttle Hill Road in the early morning of March 10, 1981, by a passing motorist. Robert Hendrix, a pathologist, conducted an autopsy of Garrett later that day. Hendrix stated the two wounds to the back were not fatal, and determined the cause of death to be a shotgun wound to the heart. Hendrix stated that he could not tell the order of the shots or at which location the victim died.

Additional testimony was introduced at trial linking the defendant to Garrett's murder. Brenda Barron, who lived with the defendant at the time of the shooting, testified that the defendant took a shotgun and shells with him on March 9, 1981, and stated that he was going to collect money. Further, she stated that the defendant came home around 3:00 A.M. on March 10, 1981, placed the shotgun near the door, and sat on the bed crying. Barron testified that the next day defendant took his gun, wrapped it up in a blanket, and stated that he had a buyer for it. Barron said she did not see the shotgun again.

The day following Garrett's murder defendant, Barron, Alex Mullins and Juanita Mullins went to a drive-in movie in defendant's car. At the movie, defendant confessed to killing Garrett and told the three that he was going to turn himself in to the police.

Michigan State Police Officer Roy Turbett testified that he interviewed the defendant and informed him of the statements the Mullinses had made revealing the defendant's confession. Turbett testified that defendant told him he had confessed to gain attention, stating that he was depressed due to a recent divorce. Defendant denied any involvement in the homicide or knowing Michael Smith.

While defendant did not testify at trial, his counsel argued in closing argument that defendant neither knew of Smith's plan to kill Garrett nor aided Smith in this activity. Defense counsel argued that the fatal shots were fired by Smith at 219 North Adams rather than at Tuttle Hill Road.

Following jury deliberations, defendant was convicted of second-degree murder and of being an accessory after the fact to Paul Garrett's murder.

On appeal defendant contends that he could not be convicted of both the principal offense and as an accessory after the fact. We agree.

A panel of this Court recognized this fact in *People v Davenport,* 122 Mich App 159; 332 NW2d 443 (1982). *Davenport* cited *People v Lucas,* 402 Mich 302; 262 NW2d 662 (1978), for the proposition. Although we agree that a person may not be convicted as both a principal and an accessory after the fact, we do not necessarily agree that *Lucas* stands for this position. *Lucas* held that an accessory after the fact is not an aider and abettor and, thus, cannot be found guilty as a principal for aiding and abetting in the commission of a felony.

The definition of an accessory after the fact given by Perkins in his treatise on criminal law includes the requirement that the accessory not be guilty of the felony as a principal. Perkins, Criminal Law (2d ed), ch 6, § 8, p 667. Perkins cites a 1937 case from Mississippi as support for this requisite, *Crosby v State,* 179 Miss 149; 175 So 180 (1937). After further discussion of the crime, Perkins explains that "[o]ne who is an accessory before the fact may also become an accessory to the same offense after the fact, but this is not true of one who is guilty as a principal felon." *Id.,* p 669. This statement of law is also recognized by LaFave and Scott in their treatise on criminal law. "A principal in either the first or second degree may not also become an accessory after the fact by his subsequent acts. However, it has been held that one who was only an accessory before the fact may also be an accessory after the fact." LaFave & Scott, Criminal Law, § 66, p 523. Since Michigan treats all aiders and abettors as principals, regardless of whether the aid was rendered before or during the crime, logic dictates that a defendant could not be found guilty as an aider and abettor and an accessory after the fact. To do so would violate the rule that an accessory after the fact cannot be guilty of the felony as a principal.

Furthermore, we note that our Criminal Jury Instructions provide an instruction explaining the difference between an aider and abettor and an accessory after the fact, instructing the jury to choose one or the other of the offenses. CJI 8:2:02. The difference, the instruction explains, is that an aider and abettor knew about and intended to further the commission of the crime before it ended and did some act or gave some encouragement which helped in the commission. An accessory after the fact helped the person who commit-

ted the crime only after the crime had ended. Case law supports this distinction. *People v Karst,* 118 Mich App 34; 324 NW2d 526 (1982); *People v Bargy,* 71 Mich App 609; 248 NW2d 636 (1976). An accessory after the fact decides to help the principal only after the felony has been committed. It is impossible for one involved as a principal not to have known of the crime until after he had completed it.

In addition, allowing a defendant to be convicted as both an aider and abettor and an accessory after the fact would mean that the other principal involved would be guilty of one felony, while the defendant who helped before and after would be guilty of the principal felony and a second felony. This result is so because an accessory after the fact is defined as a person who helps "another." Thus a second person would have to be guilty as a principal and the defendant's help before or during the crime would also make defendant guilty as a principal. The result could be that, for instance, the person who actually committed a murder would be treated less harshly than someone who provided the gun and destroyed it after the murder.

The appropriate way to view a defendant who has helped both before and after a crime is as a principal. In the instant case the jury found defendant guilty of second-degree murder and as an accessory after the fact. We vacate his conviction as an accessory after the fact and affirm his conviction on the principal offense.

Defendant also argues that the jury was improperly instructed for two reasons. First, defendant complains that the judge misspoke by saying that aiding and abetting could happen either before or after the commission of the crime. We find, however, that the judge immediately stated, "Notice

now that I am saying before or at the time of the commission of the crime. I am not talking about accessory after the fact that is in Count ii." Furthermore, the court reiterated the correct law again seconds later, saying: "[T]he aid or assistance to the commission of murder must have been under Count I—to make the defendant guilty of Count i must have been done either before or at the time of the commission of the crime. If there was aid shown afterward, that would be considered under Count ii." We find that the trial judge sufficiently corrected his inadvertent error.

Defendant also contends that the judge erred by instructing the jury that helping a felon escape is sufficient assistance to find defendant guilty of aiding and abetting. We hold that the trial court did not err. Planning in advance to provide a felon with a quick "getaway" is sufficient assistance to find defendant guilty as an aider and abettor. The trial judge did instruct the jury that an aider and abettor must intend the commission of the crime, thus distinguishing a defendant who forms the intent to aid a felon only after the crime and a defendant who plans in advance to provide a method of escape for a felon. We would advise, however, that in the future a judge make this distinction clear if he or she wishes to discuss escape.

Next, defendant alleges that prosecutorial misconduct requires that defendant's convictions be reversed. We have reviewed each of the instances defendant contends amount to error requiring reversal and we find no error.

Defendant also contends that the trial court abused its discretion in qualifying Officer Dorsetto as an expert witness concerning gunshot wounds. We disagree.

Determining whether an expert witness is qualified to testify as an expert rests within the sound discretion of the trial court and will not be reversed on appeal unless there has been an abuse of that discretion. *People v Potter,* 115 Mich App 125, 132; 320 NW2d 313 (1982), lv den 417 Mich 897 (1983). Officer Dorsetto testified that he had taken both undergraduate and graduate courses in homicide investigation which included the topic of specific information that can be obtained from examining gunshot wounds. Additionally, Dorsetto had been employed by the Michigan State Police for ten years, the past three as a Detective Sergeant, and had a bachelor's and a master's degree in criminal justice. Due to the limited nature of the expert topic the trial court did not abuse its discretion in qualifying Dorsetto as an expert.

Defendant's last allegation is that he was denied effective assistance of counsel. We have reviewed each instance of alleged ineffective assistance and we find that defendant had adequate assistance of counsel under the tests enunciated in both *People v Garcia,* 398 Mich 250; 247 NW2d 547 (1976), and *Strickland v Washington,* 466 US 668; 104 S Ct 2052; 80 L Ed 2d 674 (1984).

Defendant's conviction for aiding and abetting second-degree murder is affirmed and his conviction for accessory after the fact is vacated.