**STATE of Minnesota, Respondent,**

v.

**Todd SKIPINTHEDAY, Appellant.**

**No. A04–1293.**

Court of Appeals of Minnesota.

Sept. 27, 2005.

Mike Hatch, Attorney General, James B. Early, Assistant Attorney General, St. Paul, MN; and Michelle Dietrich, Redwood County Attorney, Redwood County Courthouse, Redwood Falls, MN, for respondent.

John M. Stuart, State Public Defender, Philip Marron, Assistant Public Defender, Minneapolis, MN, for appellant.

Considered and decided by KALITOWSKI, Presiding Judge; SHUMAKER, Judge; and MINGE, Judge.

## OPINION

GORDON W. SHUMAKER, Judge.

Appellant challenges his sentence on three counts of being an accomplice after the fact. Appellant argues that there were not multiple victims of his three offenses, even if there were multiple victims for the offenses committed by the principals, and that because the conduct was part of a single behavioral incident, appellant could be sentenced on only one count. Because we hold that the victims of the principal offenses are not victims of appellant's crimes, the single-behavioral-incident rule applies and appellant can receive only one sentence for his three convictions. We affirm in part, reverse in part, and remand.

## FACTS

On July 12, 2003, appellant Todd Skipintheday, James Mata, Itanca Henry, and Kimberley Berry drove from Minneapolis to the Redwood Falls area. Skipintheday brought a bag of clothing into which Mata put a pistol and ammunition.

The group obtained a motel room in Morton, where they initially left the pistol. They retrieved the pistol later when they decided to go to a party where they knew members of the Native Mob street gang would be present. Mata and Henry were members of the Native Gangster Disciples, a rival gang.

At the party, Henry and Mata argued with Hunter Parker, Michael O'Brien, and Jarvis Wabasha. Ultimately, Parker, O'Brien, and Wabasha were shot. Wabasha died from his wounds. Skipintheday was present during the arguments and shootings but did not participate in them.

After the shootings, Henry, Mata, Berry, and Skipintheday fled in a car that Berry drove. Skipintheday yelled to her, "Let's get out of here. We got to go." And he advised her that, "You didn't see anything." Skipintheday noticed that Mata had a pistol different from the one he had brought to the party.

The police stopped the fleeing car. Skipintheday removed the ammunition from the pistol and hid it and the gun in separate locations in the car. When the police questioned Skipintheday, he denied involvement in the shootings and any gang connections, and he misidentified Itanca Henry as Robert Henry to protect him from an outstanding federal arrest warrant.

The state charged Skipintheday with several crimes relating to the shootings.

He entered a plea agreement under which he pleaded guilty to being an accomplice after the fact to first-degree murder, attempted second-degree murder, and first-degree assault for the benefit of a gang. Each charge related to a different victim. The remaining charges were to be dismissed, and there was no agreement as to sentencing.

In his plea, Skipintheday admitted that he hid the gun and ammunition and that he gave false statements to the police with the intention of aiding those who had done the earlier shootings.

Because these accomplice-after-the-fact crimes were not ranked under the Minnesota Sentencing Guidelines, the district court assigned the following rankings: (1) assault in the first degree for the benefit of a gang—Level VII; (2) murder in the first degree—Level VIII; and (3) attempted murder in the second degree—Level VIII. The court then sentenced each crime consecutively because each involved a separate victim. The sentences were for 48 months, 52 months, and 48 months respectively, for a total of 148 months.

On appeal, Skipintheday challenges the propriety of consecutive sentencing and of the enhanced sentence for a crime committed for the benefit of a gang.

## ISSUES

1. Appellant pleaded guilty to being an accomplice after the fact to first-degree murder, attempted second-degree murder, and first-degree assault, involving three separate victims and arising out of the same behavioral incident. The court imposed three consecutive sentences under the multiple-victim exception to the single-behavioral-incident rule.

Did the court properly determine that the victims of the principal crimes were also victims of the after-the-fact crimes?

2. Was it proper for the court to enhance a sentence on the ground that the crime was for the benefit of a gang without allowing appellant to have the facts supporting the enhancement determined by a jury?

## ANALYSIS

■ A district court's sentencing decision will be overturned on appeal only if there has been a clear abuse of the court's discretion. *State v. Schmit*, 601 N.W.2d 896, 898 (Minn.1999).

Skipintheday argues that the district court abused its discretion in various respects in imposing consecutive sentences. He contends that his crimes constituted a single behavioral incident to which no exception applies; that his crimes were not crimes against persons but were against the administration of justice; and that the court improperly determined that he committed accomplice after the fact to an assault committed for the benefit of a gang. He argues that his sentences should be vacated and the matter remanded for re-sentencing.

### 1. Single Behavioral Incident

■ When a person's conduct constitutes more than one criminal offense, he may be punished for only one of the offenses. Minn.Stat. § 609.035, subd. 1 (2002). The purpose of the statute is to limit punishment to a single sentence when a single behavioral incident results in the violation of multiple criminal statutes. *State v. Brown*, 597 N.W.2d 299, 305 (Minn.App.1999), *review denied* (Minn. Sept. 14, 1999).

■ Skipintheday pleaded guilty to being an accomplice after the fact to three crimes. An accomplice after the fact is someone who, among other things, intentionally aids a criminal by concealing ev-

idence of a crime, providing misleading information about a crime, or otherwise obstructing the investigation or prosecution of a crime. Minn.Stat. § 609.495, subd. 3 (2002). Skipintheday admitted that, after the shootings, he made false statements to the police and he hid Mata's pistol and ammunition. He admitted that he did these things intentionally to aid the participants in the shootings. It is clear that Skipintheday's after-the-fact conduct constituted a single behavioral incident. The state concedes this, and the district court did not find otherwise. Thus, Skipintheday is entitled to a single sentence unless an exception to Minn.Stat. § 609.035 (2002) applies.

### 2. Multiple–Victim Exception

 The courts have created an exception to Minn.Stat. § 609.035 which allows the imposition of multiple sentences despite the existence of a single behavioral incident if the offenses involve multiple victims. *State v. Bertsch,* 689 N.W.2d 276, 286 (Minn.App.2004). The district court applied this exception in sentencing Skipintheday because each count to which he pleaded guilty involved a separate victim.

Skipintheday argues that the multiple-victim exception does not apply because none of the victims of the shootings were directly harmed by Skipintheday's after-the-fact conduct. The state contends that no authority requires direct harm before a person may be classified as the victim of a crime.

We do not see the concept of "victim" as turning on whether harm is direct or indirect. Absent a statutory or caselaw definition of the word, we turn to a common lexical meaning: A victim is a person harmed by a crime, tort, or other wrong. *Black's Law Dictionary,* 1561 (7th ed.1999). Applying that definition, the

harm to O'Brien, Parker, and Wabasha occurred when the crimes against them occurred. And those crimes were completed before Skipintheday did the acts that constituted his crimes. None of the shooting victims were harmed any further, either directly or indirectly, by Skipintheday's after-the-fact conduct. Thus, there were no personal victims of Skipintheday's crimes, and, therefore, there could not be multiple victims of his crimes. Rather, we agree with Skipintheday's argument that his crimes were against the administration of justice and not against specific persons.

The plain sense of section 609.495, subd. 3, is that certain after-the-fact conduct offends the justice system by thwarting the detection, investigation, or prosecution of a crime. Harm to a victim is inflicted when a crime is committed against that victim. That is so whether or not the perpetrator is ever apprehended or prosecuted or convicted. And that harm is addressed through the specific criminal penalties provided in the statute defining the crime that was committed against the victim. Although personal harm to a crime victim cannot be undone by the mechanisms of the law, the core value of justice can be vindicated if the criminal is punished for his nefarious act. Section 609.495, subd. 3, addresses the harm that may be done to society as a whole when after-the-fact conduct obstructs or burdens the vindication of the core value of justice.

We note also that a person can be liable for the crimes of another if the person was an accomplice of the other. Minn.Stat. § 609.05, subd. 1 (2002). But the supreme court has held that an accessory after the fact is not an accomplice of the principal. *State v. Swyningan,* 304 Minn. 552, 555, 229 N.W.2d 29, 32 (1975). *See also State v. Leja,* 660 N.W.2d 459, 466 (Minn.App. 2003) (holding that it is impossible as a matter of law for a principal to also be

guilty of being an accomplice after the fact), *rev'd on other grounds*, 684 N.W.2d 442 (Minn.2004); *State v. Sullivan*, 77 N.J.Super. 81, 90, 185 A.2d 410, 415 (1962) (stating "[a]n accessory after the fact 'cannot be charged, or punished as the principal offender. His offense is distinctly his own, and he is liable to a different punishment.... ' ") (citation omitted); *People v. Hartford*, 159 Mich.App. 295, 299, 406 N.W.2d 276, 278 (1987) (a defendant may not be convicted of the principal offense of murder and as an accessory after the fact to the same murder).

Because there were no personal victims of Skipintheday's after-the-fact crimes and because he cannot be held liable for the crimes that did involve multiple victims, the district court erred in imposing separate sentences for the offenses to which Skipintheday pleaded guilty.

### 3. *Crimes Against Persons*

The state argues that the crimes to which Skipintheday pleaded guilty were crimes against persons and therefore may be sentenced consecutively. *See* Minn. Sent. Guidelines II.F. But because we have concluded that separate sentences were not permissible, we need not determine whether they were properly made consecutive. In any event, we would apply the multiple-victim exception and would reject the state's argument on that basis.

### 4. *Sentencing Issues*

#### a. Crime Subject to Sentencing

■ Because we have determined that Skipintheday's three crimes arose out of a single behavioral incident to which the multiple-victim exception does not apply, the district court may properly impose only one sentence, even though all three convictions may stand. *See State v. Papadakis*, 643 N.W.2d 349, 358 (Minn.App. 2002) (when criminal conduct arises from a single behavioral incident, multiple convictions are permissible but multiple sentences are not).

■ Although Minn.Stat. § 609.035 does not specify which of the multiple convictions is to be sentenced, sentencing policy contemplates that the court will sentence the conviction that carries the highest penalty:

> The policy underlying [Minn.Stat. § 609.305] appears to be that where the statute is applicable and defendant is convicted of multiple offenses, as a practical matter a single sentence will necessarily take into account all violations, and imposing up to the maximum punishment for the most serious offense will include punishment for all offenses.

*State v. Johnson*, 273 Minn. 394, 399, 141 N.W.2d 517, 522 (1966).

Presuming that the district court will impose a sentence that reflects this policy, the most serious offense is that of accomplice after the fact to murder in the first degree. *But see State v. Alt*, 529 N.W.2d 727, 731 (Minn.App.1995) (referring to Minn.Stat. § 609.035, the court of appeals said: "We conclude that the statute was not intended to limit the trial court's discretion in choosing the conviction on which to impose sentence.").

#### b. Severity Level

■ In the sentencing of a felony in Minnesota, the district court must impose the presumptive sentence for that crime under the Minnesota Sentencing Guidelines unless there are substantial and compelling reasons to depart from that sentence. Minn. Sent. Guidelines II.D. The presumptive sentence is the product of calculating the offender's criminal-history score and applying the severity level of the crime according to a sentencing grid. *Id.*, II.C.

But here the crime of accomplice after the fact has not been given a severity-level ranking. Minn. Sent. Guidelines cmt. II. A.03. Thus, it was within the district court's discretion to determine an appropriate severity level. For the crime of accomplice after the fact to murder in the first degree, the district court assigned a severity level of VIII out of a possible 11 severity levels. In doing so, the district court relied on the guidance provided in *State v. Kenard,* 606 N.W.2d 440 (Minn. 2000).

■ The district court made a thorough analysis of the gravity of the conduct underlying the unranked offense, the similarity of ranked offenses, the conduct and severity level assigned to other offenders for this offense, and the severity level assigned to others who have engaged in similar conduct. *See id.* The district court considered in detail the culpability of Skipintheday, reviewed other caselaw on the issue of sentencing this unranked offense, and applied statistical factors to determine the general pattern of sentences pertinent to the issue before it. The district court's thoughtful consideration of the ranking issue in the context of the purposes of the sentencing guidelines and its rational application of the principles underlying the guidelines to the crime to be sentenced, amply demonstrate that the district court did not abuse its discretion in concluding that the appropriate severity level for accomplice after the fact to first-degree murder is level VIII.

c. Benefit–of–a–Gang Enhancement

■ Of the three crimes to which Skipintheday pleaded guilty to being an accomplice after the fact, only the assault was charged as being committed for the benefit of a gang. However, Skipintheday was not charged with after-the-fact conduct for the benefit of a gang. *See gener-*ally *State v. Chuon,* 596 N.W.2d 267, 270 (Minn.App.1999) (holding crime committed for the benefit of a gang is a substantive criminal offense), *review denied* (Minn. Aug. 25, 1999). Nevertheless, the district court applied a 12–month enhancement to the after-the-fact assault conviction. The state concedes that it was improper for the district court to add the enhancement, but argues that the court could nevertheless consider gang-related conduct in ascertaining the severity level of the unranked after-the-fact crime. The state asks for a remand for that purpose.

We have determined that the district court's severity ranking of the only crime as to which it can properly impose a sentence was within the district court's discretion. And no enhancement of that sentence would be proper because Skipintheday would have a right to have a jury decide the facts supporting that enhancement. *Blakely v. Washington,* 542 U.S. 296, 124 S.Ct. 2531, 159 L.Ed.2d 403 (2004).

**DECISION**

The district court erred in imposing three sentences for acts that were part of a single behavioral incident and in enhancing one sentence for a crime committed for the benefit of a gang. Those sentences are reversed. The district court properly exercised its discretion in assigning a severity level to the most serious of the three crimes and that determination is affirmed. The matter is remanded for resentencing on a single count.

**Affirmed in part, reversed in part, and remanded.**