# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

TARA LAVETTE SULLIVAN,

        Defendant-Appellant.

UNPUBLISHED
October 28, 2014

No. 315843
Wayne Circuit Court
LC No. 12-008623-FC

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

ERIC MELVIN SULLIVAN,

        Defendant-Appellant.

No. 316063
Wayne Circuit Court
LC No. 12-008623-FC

Before: BOONSTRA, P.J., and MARKEY and K. F. KELLY, JJ.

PER CURIAM.

In Docket No. 315843, defendant Tara Sullivan appeals by right her jury convictions of assault with intent to commit murder, MCL 750.83, and carrying a concealed weapon (CCW), MCL 750.83, for which she was sentenced to concurrent prison terms of 12 to 20 years and one to five years, respectively. In Docket No. 316063, defendant Eric Sullivan appeals by right his jury convictions of assault with intent to commit murder, CCW, felonious assault, MCL 750.82, and possession of a firearm during the commission of a felony, MCL 750.227b. The trial court sentenced him to concurrent prison terms of 10-1/2 to 20 years for the assault with intent to commit murder conviction, one to four years for the felonious assault conviction, and one to five years for the CCW conviction, to be served consecutive to a two-year term of imprisonment for the felony-firearm conviction. We affirm in both cases.

## I. FACTUAL BACKGROUND

-1-

Defendants' convictions arise from the non-fatal shooting assault of Terrence Emil McKelney, who defendant Eric Sullivan shot on August 1, 2012, after an initial encounter with defendant Tara Sullivan in an alley in Detroit. The two defendants were tried jointly with codefendants Deontay Sullivan and Diontai Manier, before two separate juries.[1] Deontay Sullivan and Manier were acquitted of all charges. Tara Sullivan is the mother of Eric Sullivan and Deontay Sullivan. Tara's third son, 16-year-old Cortez Sullivan, was not charged, but the victim testified that he was present during the offense. Although Cortez was initially prepared to testify as a defense witness, he later exercised his Fifth Amendment privilege and declined to testify. The prosecutor then offered Cortez both use and transactional immunity, but he still refused to testify.

The 42-year-old victim testified that he knew Tara Sullivan because they had attended school together as children. Tara left the area for approximately 20 years, but then returned to her childhood home, and the victim and Tara resumed contact. According to the victim, he loaned Tara between $200 and $300.

The victim testified that on the afternoon of August 1, 2012, he encountered Tara and Cortez while walking through an alley. He claimed that Tara pulled out a gun and said, "I'm getting your money today." The victim saw that Tara's son also had a gun, but the victim thought that Tara was joking until he saw two other men, one of whom was Eric Sullivan, walking toward him with their heads down. As the victim ran to flee, he heard Tara say, "Get him." Eric shot him, but he was able to run away. The victim later saw a group of people, including defendants Tara and Eric Sullivan, firing guns at a street corner. The victim called his nephew, who picked him up and drove him to the hospital.

Detroit police officer Allen Williams testified that he heard the gunshots while driving on Grand River Avenue. Williams, who was off duty, testified that he was with a female passenger whom he had just met, but he did not know her name. Officer Williams called 911 to report what he saw. Officer Williams testified that he saw Tara Sullivan running with a man in a black t-shirt who was shooting at the victim. Although Officer Williams could not identify the shooter, he watched him and other individuals enter and then leave in a gray Escort.

Other police officers stopped the Escort. Tara Sullivan was driving, and Tara's three sons and codefendant Manier were inside the vehicle. A laundry bag that contained three guns was recovered from inside the Escort. Tara Sullivan's jury heard testimony regarding a statement she gave to the police on August 2, 2012. Tara did not dispute that she and Cortez had encountered the victim in the alley, but she claimed that the victim had threatened her. She also claimed that she called her son Eric to tell him what happened. After Eric arrived in the alley, she and Cortez went home. Tara stated that if Eric fired a gun at the victim, he did so only to protect her.

---

[1] Tara Sullivan was tried before one jury and the other three defendants before a second jury.

The juries acquitted defendants Tara and Eric Sullivan of an additional charge of armed robbery, but convicted them of assault with intent to commit murder and CCW, and Eric's jury also found him guilty of felonious assault and felony-firearm.

## II. PROSECUTORIAL MISCONDUCT

Tara and Eric Sullivan both challenge the trial court's decision denying their motion for a mistrial based on the prosecutor's conduct in allegedly intimidating Cortez to prevent him from testifying. Tara asserts that the prosecutor's misconduct deprived her of her constitutional right to present a defense. Eric argues that the prosecutor's misconduct deprived his jury of an opportunity to hear from a res gestae witness.

A claim that prosecutorial misconduct denied a defendant a fair and impartial trial is a constitutional issue that is reviewed de novo. *People v Mann*, 288 Mich App 114, 117; 792 NW2d 53 (2010). A trial court's decision whether to grant a mistrial is reviewed for an abuse of discretion. *People v Schaw*, 288 Mich App 231, 236; 791 NW2d 743 (2010). "This Court will find an abuse of discretion if the trial court chose an outcome that is outside the range of principled outcomes." *Id.* A mistrial should only be granted for an irregularity that prejudices the defendant's rights and impairs his or her ability to receive a fair trial. *Id.* A mistrial should only be granted if the prejudicial effect of an error is not curable in any other way. *People v Horn*, 279 Mich App 31, 36; 755 NW2d 212 (2008).

We are not persuaded that the prosecutor's remark that she intended to charge Cortez if his testimony placed him at the crime was so intimidating that any prejudicial effect could only be cured by the trial court's granting a mistrial. Tara correctly observes that she has a constitutional right to present a defense.

The Fourteenth Amendment's Due Process Clause and the Sixth Amendment's Compulsory Process or Confrontation Clauses provide a defendant with a meaningful opportunity to present a complete defense. See *People v Unger*, 278 Mich App 210, 249; 749 NW2d 272 (2008). A prosecutor's successful efforts to intimidate witnesses from testifying would deny a defendant's constitutional right to due process. *People v Canter*, 197 Mich App 550, 569; 496 NW2d 336 (1992). And, a remark by the prosecutor that a witness may face criminal charges that is overheard by the witness may be intimidating. *People v Callington*, 123 Mich App 301, 306; 333 NW2d 260 (1983). But the question remains whether the prosecutor substantially interfered with the witness's free and unhampered choice to testify. See *Lambert v Blackwell*, 387 F3d 210, 260 (CA 3, 2004), and *United States v Saunders*, 943 F2d 388, 392 (CA 4, 1991). If substantial interference is established, the inquiry shifts to whether the defendant was prejudiced. *United States v Foster*, 128 F3d 949, 953 (CA 6, 1997); *Saunders,* 943 F2d at 392. A trial court and a prosecutor may take steps to dispel any intimidation of a witness after it occurs. *People v Williams*, 45 Mich App 623, 627; 207 NW2d 176 (1973). We review on a case-by-case basis the prosecutor's remarks in context. *Callington*, 123 Mich App at 305.

In *Williams*, 45 Mich App at 626, this Court ordered a new trial where a prosecutor informed a res gestae witness that she had a constitutional right not to testify against herself and that she would be prosecuted for CCW or perjury if she testified. After the trial court advised the witness of her rights, she refused to testify on the advice of her appointed counsel. *Id.* This

Court determined that a new trial was warranted. Commenting on "how to dispel the intimidation of a witness once it occurs," the Court stated it would "leave the solution of this problem to the prosecutor and the trial court upon retrial, with instructions that a record be made setting form whatever steps are taken to undo the damage." *Id*. at 627.

In *Callington*, 123 Mich App at 306, this Court determined that a prosecutor's remarks to the trial court, in the presence of a defense witness, that he intended to possibly charge the witness with a new offense or to institute probation violation proceedings that could result in a life sentence, were intimidating and, combined with a lengthy warning to the witness by the trial court, effectively drove the witness from the witness stand. This Court determined that the prosecutor's tardy offer of use immunity did not dissipate the prejudice because the prosecutor reserved the right to prosecute the witness within the limits of the immunity, and the Court believed that the witness would not believe that use immunity would protect his rights. *Id.* at 307. In ordering a new trial, this Court nonetheless ordered that the defense witness be given use immunity to help dispel the intimidation. *Id.* at 308.

In *United States v Thomas*, 488 F2d 334, 335 (CA 6, 1973), the appellants called as a witness a codefendant who had received a directed verdict of acquittal at the conclusion of the government's case. The codefendant agreed to consult with his counsel after being advised by counsel for one of the appellants that his testimony could lead to prosecution for "misprision of a felony." *Id.* During a recess, the codefendant was approached by a secret service agent, who informed the codefendant either that he would or could be prosecuted for misprision of a felony if he testified. *Id.* The Sixth Circuit Court of Appeals determined that an offer by the government not to prosecute the codefendant was insufficient to cure the prejudicial effect of the government's misconduct and that "[n]othing short of complete immunity, if even that, could have relieved [the codefendant's] apprehension, and restored his free and voluntary choice, eliminating the prejudice." *Id.* at 336.

In this case, nothing indicates that the prosecutor directly contacted Cortez. Rather, Tara Sullivan's counsel informed the court that he and Deontay's counsel explained to Cortez that he could be charged in this case. The trial court then appointed counsel for Cortez. Although the prosecutor remarked in open court, in Cortez's presence, that "I am going to say on the record if I put him at that scene I'm going to charge him," Cortez thereafter expressed, contrary to the advice of his counsel, that he still wanted to testify.

We reject defendants' argument that Cortez's subsequent decision not to testify, which was repeated even after the prosecutor and the trial court agreed to extend him use and transactional immunity conditioned on Cortez's truthful testimony,[2] warranted a mistrial. The trial court had the superior opportunity to consider the relevant circumstances in considering the

---

[2] Although the current immunity statute, MCL 767.6(3), only provides for use immunity, a prosecutor may add conditions that are not imposed by statute. *People v McIntire*, 461 Mich 147, 154 n 7; 599 NW2d 102 (1999). Transactional immunity is broader than use immunity because it provides a complete bar to prosecution for the offense related to the immunity. *People v Schmidt*, 183 Mich App 817, 826; 455 NW2d 430 (1990).

extent to which the prosecutor's allegedly intimidating remark had a coercive effect on Cortez. The trial court did not clearly err in finding that the transactional and use immunity granted to Cortez was sufficient to dispel the prosecutor's unintentional intimidation of Cortez.

The fact that the immunity did not cover perjury does not compel a different conclusion because the Fifth Amendment does not protect a witness from prosecution for perjury if a witness chooses to testify but does so falsely. *People v Bassage*, 274 Mich App 321, 325-326; 733 NW2d 398 (2007); *United States v Seltzer*, 794 F2d 1114, 1119 (CA 6, 1986) (the Fifth Amendment "allows a witness to remain silent but not swear falsely"). And regardless of who conveyed information to Cortez regarding the condition that he provide truthful testimony, merely informing a witness that false testimony could result in a perjury charge does not rise to the level of intimidation. *People v Layher*, 238 Mich App 573, 587; 607 NW2d 91 (1999). It follows that a license to commit perjury was not necessary to dispel any prejudice caused by the prosecutor's remark.

Because the actions of the prosecutor and the trial court were sufficient to dispel any possible prejudice caused by the prosecutor's allegedly intimidating remark, defendants were not deprived of due process. The trial court did not err in denying the motion for a mistrial. If defendants truly wanted Cortez to testify after he was granted use and transaction immunity, they could have taken steps to compel his testimony. See *People v Dyer,* 425 Mich 572, 579; 390 NW2d 645 (1986) (a trial court may compel a witness to answer questions where it can determine as a matter law that the testimony could not incriminate the witness).

### III. DEFENDANT TARA SULLIVAN'S REMAINING ISSUES

### A. RIGHT TO TESTIFY

Defendant Tara Sullivan argues that she was deprived of her right to testify on her own behalf when the trial court denied her motion to reopen the proofs. We disagree.

By foregoing the opportunity to testify before the close of proofs, Tara waived her constitutional right to testify on her own behalf. *People v Simmons*, 140 Mich App 681, 684-685; 364 NW2d 783 (1985). It was not necessary that Tara waive her right to testify on the record. *Id*.; *People v Harris*, 190 Mich App 652, 661-662; 476 NW2d 767 (1991). The decision whether to reopen proofs to allow Tara's testimony after the parties had rested was within the discretion of the trial court. *People v Herndon*, 246 Mich App 371, 419; 633 NW2d 376 (2001). A trial court abuses its discretion when it chooses "an outcome outside that is the range of principled outcomes." *Schaw*, 288 Mich App at 236.

A court may consider several factors in deciding whether to reopen proofs, including whether it would afford an unfair advantage to the moving party and result in surprise or prejudice to the nonmoving party. *Herndon*, 246 Mich App at 420. The court should also consider a defendant's right to testify, the timing of the motion, any change of circumstances, or the existence of newly discovery material evidence. *People v Moore*, 164 Mich App 378, 383-384; 417 NW2d 508 (1987), mod on other grounds 433 Mich 851 (1989).

In this case, the request to reopen proofs was tardy. It was not made until after closing arguments had concluded. See *Moore,* 164 Mich App at 384. In addition, counsel failed to offer

any basis for calling into question the waiver arising from Tara's failure to testify. *Harris*, 190 Mich App at 661-662. Although counsel asserted that Tara now wanted to testify because Cortez had declined to testify, Tara was aware at the time she exercised her right not to testify that Cortez had declined to testify. Under these circumstances, the trial court did not abuse its discretion in denying Tara's belated motion to reopen proofs.

## B. MISSING WITNESS INSTRUCTION

Tara Sullivan next argues that the trial court erred in denying her request for a missing witness instruction with respect to both Cortez and the unidentified passenger who was with Officer Williams at the time of the offense. Tara argues that the failure to give the requested jury instruction is constitutional error, equating it with the violation of a defendant's right to due process when the government fails to preserve evidence. See *United States v Jobson*, 102 F3d 214, 218 (CA 6, 1996). This standard has been applied to witnesses, at least where a witness has been lost by deportation. *United States v Dring*, 930 F2d 687, 693-694 (CA 9, 1991). In that context, however, the defendant bears the initial burden of showing that the government acted in bad faith and that the conduct prejudiced the defendant's case. *Id.* at 693. Whether bad faith exists depends on the police knowledge of the exculpatory value of the evidence when it is lost. *United States v Leal-Del Carmen*, 697 F3d 964, 970 (CA 9, 2012), citing *Arizona v Youngblood,* 488 US 51, 57; 109 S Ct 333; 102 L Ed 2d 281 (1988).

Here, Cortez was not a lost witness. As discussed earlier, Cortez was present in the courtroom, but declined to testify. As previously explained, immunity granted to Cortez was sufficient to dispel any prejudice caused by the prosecutor's remarks in his presence. Tara has failed to establish that a missing witness instruction was warranted in this circumstance.

Tara's argument regarding the unidentified passenger in Officer Williams's vehicle is substantively directed at the prosecutor's duties to discover and produce evidence under MCL 767.40a. This argument does not implicate the prosecutor's duty to preserve known evidence. We review a trial court's decision regarding the appropriateness of a missing witness instruction for an abuse of discretion. *People v Eccles*, 260 Mich App 379, 389; 677 NW2d 76 (2004).

We agree that the trial court erred to the extent that it declined to give a missing witness instruction only because the prosecutor had not endorsed the unidentified passenger as a witness. Under MCL 767.40a(5), Tara was entitled to request assistance in identifying and locating the unnamed female passenger. *People v Perez*, 469 Mich 415, 419; 670 NW2d 655 (2003). If the prosecutor fails to provide the requested assistance, a missing witness instruction may be appropriate. *Id.*, at 420.

A defendant's request for assistance must be made in writing "not less than 10 days before the trial or at such other time as the court directs." MCL 767.40a(5). In this case, Tara only filed a motion for discovery that sought any information possessed by the prosecutor regarding the identity of the female passenger. The motion also challenged Officer Williams's credibility and sought to compel him to provide truthful testimony regarding the identity of the female passenger. There is, however, no indication in the record that Tara followed through in obtaining a decision on the motion, resulting in its abandonment. See *People v Riley*, 88 Mich App 727, 731; 279 NW2d 303 (1979). In any event, the discovery motion did not contain a

request for assistance in identifying and locating the unnamed female passenger. As such, Tara was left with the opportunity at trial to cross-examine Officer Williams regarding the female passenger and to raise questions regarding his credibility for the trier of fact. Because Tara has not established that the abandoned motion was sufficient to constitute a request for assistance under MCL 767.40a(5), a missing witness instruction was not warranted. We will not reverse a trial court's decision when it reaches the right result, albeit for the wrong reason. *People v Mayhew*, 236 Mich App 112, 118 n 2; 600 NW2d 370 (1999).

## C. ACCESSORY AFTER THE FACT

Tara Sullivan next challenges the trial court's instructing the jury according to CJI2d 8.7, which explains the distinction between aiding or abetting and accessory after the fact. Tara argues that the instruction was misleading because the jury was not given the option of finding her guilty of accessory after the fact and because the jury was not informed that she could not be convicted as an aider and abettor if she were an accessory after the fact.

Because Tara requested the instruction based on CJI2d 8.7 and her counsel expressed satisfaction with the initial jury instructions as given, Tara waived any challenge to the initial instructions. *People v Kowalski*, 489 Mich 488, 504; 803 NW2d 200 (2011). And, we, therefore, we limit our review to Tara's challenge to the additional instruction the trial court gave to the jury during deliberations in response to its request for guidance regarding how it should communicate its belief that Tara was guilty of accessory after the fact to assault with intent to commit murder. Tara did not object to this instruction when it was given, but instead first requested that the jury be given the option of finding Tara guilty of accessory after the fact when the trial court received the jury's note that it had reached a verdict. Under these circumstances, Tara failed to timely preserve this issue for appeal. To properly preserve this issue for appeal, defendant was required to object to the instruction before the jury resumed its deliberations. MCR 2.512(C); *People v Gonzalez*, 256 Mich App 212, 225; 663 NW2d 499 (2003). Therefore, Tara has the burden of establishing that plain error affected her substantial rights and that the error resulted in her wrongful conviction when she was actually innocent or seriously affected the fairness, integrity, or public reputation of judicial proceedings. *People v Vaughn*, 491 Mich 642, 664-665; 821 NW2d 288 (2012).

We examine jury instructions as a whole to determine if there were error. *Kowalski*, 489 Mich at 501. A defendant is entitled to have the jury decide his or her guilt from a consideration of every essential element of the charged offense. *Id.* But an imperfect instruction is not grounds for setting aside a conviction if the instructions fairly presented the issues to be tried and adequately protected the defendant's rights. *Id.* at 501-502. "After jury deliberations begin, the court may give additional instructions that are appropriate." MCR 2.513(N)(1).

Tara does not claim that the jury was misinformed regarding aiding and abetting, which is not itself a separate substantive offense. *People v Robinson*, 475 Mich 1, 6; 715 NW2d 44 (2006). Rather, it allows vicarious liability to be imposed on an accomplice when (1) someone committed the crime charged; (2) the defendant performed acts or gave encouragement that assisted the commission of the crime, and (3) the defendant intended the commission of the crime or knew that someone else intended its commission at the time that the defendant gave the aid and encouragement. *Id.* The trial court's jury instructions for the charged offenses

specifically required that the jury find that Tara provided the necessary assistance before or during the offense. The trial court repeated this requirement when reading the instruction distinguishing between aiding or abetting and accessory after the fact, as set forth in CJI2d 8.7.

Unlike aiding or abetting, accessory after the fact is a substantive offense. It is a common-law offense akin to obstruction of justice, which may be charged as a felony under MCL 750.505. *People v Perry*, 460 Mich 55, 62; 594 NW2d 477 (1999); *People v Lucas,* 402 Mich 302, 304-305; 262 NW2d 662 (1978). An accessory after the fact is a person who, with knowledge of another's guilt, renders assistance to hinder the detection, arrest, trial, or punishment of another. *Id*., citing Perkins, Criminal Law (2d ed), p. 667. This does not mean that a person cannot help another both before and after crime. "The appropriate way to view a defendant who has helped both before and after a crime is as a principal." *People v Hartford,* 159 Mich App 295, 301; 406 NW2d 276 (1987). Stated otherwise, the conviction of such a person as a principal under an aiding and abetting theory of criminal responsibility is proper. *Id.*

In this case, however, Tara was not charged as an accessory after the fact. Moreover, Tara has not established any authority allowing a trial court to instruct a jury on an uncharged offense of accessory after the fact. Whereas MCL 768.32(1) permits a jury to find an accused not guilty of a charged offense and find the accused person guilty of a necessarily included lesser offense or an attempt to commit the charged offense, *People v Cornell*, 466 Mich 335, 357; 646 NW2d 127 (2002), accessory after the fact must be separately charged to place it before the jury, *Perry*, 460 Mich at 64 n 21. Accordingly, the trial court was neither required nor permitted to give the jury the option of convicting Tara of accessory after the fact simply because it granted the defense request for a jury instruction based on CJI2d 8.7.

With respect to Tara's argument pertaining to the additional instruction given the trial court gave during deliberations, we note that the instruction in CJI2d 8.7, which was the basis for the jury's request for guidance, does not merely distinguish aiding or abetting from accessory after the fact. Rather, it assumes that both offenses have been charged. See CJI2d 8.7(4) ("[i]f the prosecutor has not proven either of these charges beyond a reasonable doubt, your verdict must be not guilty"). Indeed, the use note for the instruction contemplates that the jury must decide whether the defendant was an aider and abettor or an accessory after the fact. It states that CJI2d 8.7 should be given to the jury "after the instructions defining the elements of the felony, aiding and abetting, and accessory after the fact." Here, however, the trial court's initial instructions did not contain the elements of accessory after the fact, and the trial court gave CJI2d 8.7 before instructing on the elements of assault with intent to commit murder and aiding or abetting.

We note that this Court indicated in *People v Usher*, 196 Mich App 228, 233; 492 NW2d 786 (1992), overruled in part on other grounds in *Perry*, 460 Mich at 64-65, that former CJI 8:2:02, the predecessor to CJI2d 8.7, explains that "an accessory after the fact helps the person who committed the crime only after the crime has ended." But CJI2d 8.7 does not contain this language. Consistent with the instructions that were given in this case, CJI2d 8.7(1) requires a finding of aiding and abetting, accessory after the fact, or not guilty. The only mandatory

decision is not guilty if neither "charge" is proven. The permissive word "may"[3] is used to describe the jury's options with respect to the "charges" themselves. CJI2d 8.7(2) and (3). The jury in this case was instructed, in relevant part:

> If the prosecutor has proven beyond a reasonable doubt that before or during the Assault With Intent to Murder and Armed Robbery that defendant gave his or her encouragement or assistance in [sic] intending to help another commit the crime then you *may* find the defendant guilty of Aiding and Abetting the crime.

> If the prosecutor has proven beyond a reasonable doubt that the defendant knew about the Assault with the Intent to Murder and Armed Robbery and helped the person who committed it avoid discovery, arrest, trial, or punishment after the crime ended then you *may* find the defendant guilty of being an Accessory after the Fact. [Emphasis added.]

Contrary to Tara's argument on appeal, the jury did not indicate in its note to the trial court that it believed that Tara was guilty *only* of accessory after the fact. The jury asked for guidance on "how do we communicate to you that we believe she (the defendant) is guilty of being an accessory after the fact to the felony of assault with intent to murder." The jury might have concluded that Tara provided assistance both before, during, and after the crime, thus potentially resulting in a circumstance such as in *Hartford*, 159 Mich App at 301, in which this Court found it appropriate to vacate a conviction for accessory after the fact because a person cannot be convicted as both a principal and an accessory after the fact.

Examined in this context, the trial court's additional instruction to the jury during deliberations that it could only consider the options in the verdict form was both proper and sufficient to dispel any confusion because the jury was required to consider each charged crime separately, and it was not given the option of accessory after the fact. The only options were guilty or not guilty of the charged offenses. Because the jury instructions fairly presented the issues to be tried and adequately protected Tara's rights, there was no plain error.

## D. SENTENCING GUIDELINES

Relying on *Alleyne v United States,* 570 US ___; 133 S Ct 2151; 186 L Ed 2d 314 (2013), Tara argues that Michigan's sentencing guidelines are constitutionally infirm because they permit a sentencing judge to engage in judicial fact-finding to determine the sentencing guidelines range, which Tara argues is the equivalent of a mandatory-minimum sentence. This Court rejected this same argument in *People v Herron*, 303 Mich App 392, 405; 845 NW2d 533 (2013), appeal held in abeyance 846 NW2d 924 (2014). Because we must follow *Herron*, see MCR 7.215(J)(1), we reject this claim of error.

---

[3] The word "may" is generally permissive. See *Browder v Int'l Fidelity Ins Co*, 413 Mich 603, 612; 321 NW2d 668 (1982).

## IV. DEFENDANT ERIC SULLIVAN'S REMAINING ISSUE

Defendant Eric Sullivan argues that his multiple convictions for felonious assault and assault with intent to commit murder, arising from a single assault, violate the double jeopardy protection against multiple punishments for the same offense. We disagree.

Under the Double Jeopardy Clause of the United States and Michigan Constitutions, where the Legislature does not expressly authorize multiple punishments for the same offense, the "same-elements" test in *Blockburger v United States*, 284 US 299; 52 S Ct 180; 76 L Ed 306 (1932), is applied to determine if the double jeopardy prohibition against multiple punishments for the same offense has been violated. *People v Smith*, 478 Mich 292, 315-316, 733 NW2d 351 (2007). Under this test, multiple convictions are permitted if each offense requires proof of a fact that is not required for the other offense. *Id.* at 305.

"The elements of the crime of assault with intent to murder are (1) an assault, (2) with an actual intent to kill, (3) which, if successful, would make the killing murder." *People v Warren (After Remand)*, 200 Mich App 586, 588; 504 NW2d 907 (1993). "The elements of felonious assault are (1) an assault, (2) with a dangerous weapon, and (3) with the intent to injure or place the victim in reasonable apprehension of an immediate battery." *People v Avant*, 235 Mich App 499, 505; 597 NW2d 864 (1999).

Assault with intent to commit murder requires the intent to kill, which is not an element of felonious assault. Defendant incorrectly argues that the only difference between the two offenses is the necessary intent. Assault with intent to commit murder does not require the use of a dangerous weapon, which is required for felonious assault. Because of the weapon and intent distinctions between the two offenses, Eric's convictions of both assault with intent to commit murder and felonious assault do not violate the multiple-punishment strand of double jeopardy. Cf. *People v Strawther*, 480 Mich 900; 739 NW2d 82 (2007) (because assault with intent to commit great bodily harm and felonious assault have different elements, a defendant may be punished for both offenses).

We affirm.

/s/ Mark T. Boonstra
/s/ Jane E. Markey
/s/ Kirsten Frank Kelly