PEOPLE v CALLINGTON

Docket No. 55602. Submitted May 6, 1982, at Grand Rapids.—Decided February 23, 1983.

Edward E. Callington was convicted of armed robbery, Kalamazoo Circuit Court, Patrick H. McCauley, J. Defendant appeals, alleging that his only witness was intimidated into invoking the protection of the Fifth Amendment by the prosecutor's request to the trial court to inform the witness of his Fifth Amendment rights because the people intended to prosecute the witness if he were to testify and by the trial court's overemphasis to the witness of the consequences of his testifying. Defendant alleges that, as a result, he was deprived of his right to compulsory process. *Held:*

1. Although the record does not reveal any intentional wrongful conduct on the part of the prosecutor, defense counsel or the court, the effect of the prosecutor's remarks to the court and of the court's admonitions to the witness was to intimidate the witness into refusing to testify. The defendant was thereby deprived of his only corroborating witness.

2. In this case, in order to dispel the effect of the intimidation, the witness shall be given immunity at the defendant's new trial.

Reversed and remanded for a new trial.

1. CRIMINAL LAW — DUE PROCESS — RIGHT TO PRESENT WITNESSES.

The right of an accused to present his own witnesses to establish a defense is a fundamental element of due process of law.

2. APPEAL — PROSECUTORIAL MISCONDUCT — CRIMINAL LAW.

An appellate court, in reviewing a question of prosecutorial abuse or misconduct, must examine the record and evaluate the alleged wrongful acts in context; such cases are generally

REFERENCES FOR POINTS IN HEADNOTES
[1] 16A Am Jur 2d, Constitutional Law § 849.
    21A Am Jur 2d, Criminal Law §§ 718, 953.
[2] 5 Am Jur 2d, Appeal and Error §§ 624, 722.
[3] 21A Am Jur 2d, Criminal Law §§ 701 *et seq.*, 936 *et seq.*
    81 Am Jur 2d, Witnesses § 30 *et seq.*

decided on a case-by-case basis with each decision depending heavily on its peculiar facts.

3. WITNESSES — CRIMINAL LAW — FIFTH AMENDMENT RIGHTS.

The proper practice, in a case in which the prosecutor deems it necessary to inform a witness of his rights under the Fifth Amendment, is for the prosecutor to notify the court, out of the presence of the witness, of the need to so inform the witness and of the basis for the request, whereupon the court should exercise its discretion in determining whether such warnings should be given the witness and, if so, the court should inform the witness of his rights out of the presence of the jury.

*Frank J. Kelley,* Attorney General, *Louis J. Caruso,* Solicitor General, *James J. Gregart,* Prosecuting Attorney, and *Michael H. Dzialowski,* Assistant Prosecuting Attorney, for the people.

*Wickett, Bartl, Haslett, Baugh & Laudenslager, P.C.* (by *Mary E. Delehanty),* for defendant on appeal.

Before: D. F. WALSH, P.J., and WAHLS and G. R. MCDONALD,* JJ.

G. R. McDONALD, J. Defendant was convicted after a bench trial on September 4, 1980, of two counts of armed robbery, MCL 750.529; MSA 28.797, and was sentenced to concurrent terms of 10 to 20 years, with 254 days credit. In February, 1981, application for delayed appeal was granted.

Defendant first contends that he was deprived of his right to compulsory process when his only corroborating witness pled the Fifth Amendment after the prosecutor, in the witness's presence, asked the trial court to inform the witness of his rights under the Fifth Amendment. We agree.

The defense called to the stand a witness named Anthony Brown. After the witness was sworn and

---

* Circuit judge, sitting on the Court of Appeals by assignment.

gave his name for the record, the prosecutor interrupted and addressed the court as follows:

"I would ask the court to advise Mr. Brown, of his Fifth Amendment rights. It's our understanding that by testifying, he would be admitting to a probation violation which will subject him to prison."

Following the above-quoted prosecutor's request the defense counsel questioned the witness and elicited the contents of a previous discussion between the witness, his probation officer and defense counsel wherein the witness was told by his probation officer that his probation would not be violated as a result of his expected testimony in court on behalf of the defendant.

Subsequent to the above-quoted examination by defense counsel the prosecutor again addressed the court as follows:

"Your Honor, counsel knows and the court knows Carn Cunningham [the witness's probation officer] does not bind the prosecuting attorney. We are not bound by any agreement that she might have with this witness. We do intend to prosecute should he admit criminal involvement, and I would request the court to give this witness his Fifth Amendment rights."

Following the above-quoted second request by the prosecutor, the court began to advise the witness of his rights under the Fifth Amendment. The court's discussion with the witness was very lengthy, over 14 pages of trial transcript, with interruptions by both defense counsel and the prosecutor. During this discussion the court took a brief recess and called the witness's probation officer in the presence of counsel for clarification of the aforesaid alleged promise to the witness that

his probation would not be violated if he testified on behalf of the defendant. The trial judge returned to the courtroom and advised the witness that he misunderstood his probation officer and that his probation could be violated if he testified to matters that incriminated him beyond the matters discussed with his probation officer. The witness indicated to the court that he understood.

During the lengthy discussion between the court and the witness, the prosecutor further informed the court that the witness was on probation for the offense of assault with intent to rob while armed and that if the witness's probation was violated "he could go to prison for the rest of his life. I want that clear. That's what our records show."

Near the end of the aforesaid lengthy discussion, the prosecutor further informed the court that he had spoken with the witness during a recess and offered the witness use immunity and explained to the witness that he would not use what the witness said against him but reserved the right to prosecute him if the prosecution could establish a corpus.

The witness indicated to the court that he wished to exercise his rights under the Fifth Amendment and was excused by the court.

The prosecutor argues that the witness was never threatened by the prosecutor or the court but was merely advised of the facts and possible consequences should the witness choose to testify.

Defendant argues that he has the right to call his witness without having the prosecutor intimidate him and that the trial judge supported, restated, repeated and expanded upon the prosecutor's threats and consequently compelled the witness to leave the stand.

The specific question before this Court is what action the prosecutor may take, under these circumstances, in fulfilling his duty as an officer of the court without infringing on a defendant's Sixth Amendment right to compulsory process.

In discussing compulsory process the United States Supreme Court stated:

"The right to offer the testimony of witnesses, and to compel their attendance, if necessary, is in plain terms the right to present a defense, the right to present the defendant's version of the facts as well as the prosecution's to the jury so it may decide where the truth lies. Just as an accused has the right to confront the prosecution's witnesses for the purpose of challenging their testimony, he has the right to present his own witnesses to establish a defense. This right is a fundamental element of due process of law." *Washington v Texas,* 388 US 14, 19; 87 S Ct 1920; 18 L Ed 2d 1019 (1967).

In every prosecutorial abuse question, the reviewing court must examine the pertinent portion of the record and evaluate the alleged wrongful acts in context. A limited review of previous case law on prosecutorial or judicial abuse complaints reveals that such questions are usually decided on a case-by-case basis with each decision depending heavily on the peculiar facts before the court.

*Webb v Texas,* 409 US 95; 93 S Ct 351; 34 L Ed 2d 330 (1972), reversed where the trial judge admonished the defendant's only witness on his own initiative; *United States v Mendez-Rodriguez* 450 F2d 1 (CA 9, 1971), reversed where the prosecutor deported three defense witnesses before the defendant had an opportunity to interview them; *People v Pena,* 383 Mich 402; 175 NW2d 767 (1970), reversed where the prosecutor sent an official letter to each defense witness stating he would

prosecute them for perjury if they testified for the defendant and perjured themselves; *People v Butler,* 30 Mich App 561; 186 NW2d 786 (1971), reversed where the prosecutor, outside the courtroom, told a witness that he was under investigation for the offense and that he could plead the Fifth Amendment if he wished; *People v Williams #1,* 45 Mich App 623; 207 NW2d 176 (1973), reversed where the prosecutor informed the witness of her rights under the Fifth Amendment and told her that if she testified she would be prosecuted for carrying a concealed weapon or for perjury.

An examination of the pertinent portion of the record in this case does not reveal any intentional wrongful conduct on the part of the prosecutor, defense counsel or the court.

However, the prosecutor's remarks to the court, in the presence of the witness, that he intended to possibly charge the witness with a new offense or to institute probation violation proceedings which could possibly result in a sentence of life imprisonment, were intimidating regardless of the factual accuracy of the statements and, coupled with the court's additional and lengthy warnings, drove the defendant's witness from the stand. Even if the prosecutor's motives were impeccable, the implication of his statements transformed a willing witness to one who refused to testify. *United States v Smith,* 156 US App DC 66; 478 F2d 976 (1973). The court made an admirable attempt to expand and explain the prosecutor's remarks, however we feel the court's warnings were unduly emphasized to the point where they were transformed into instruments of intimidation. *People v Shapiro,* 50 NY2d 747, 762; 409 NE2d 897, 905 (1980).

We recognize that, under certain circumstances,

the prosecutor, as an officer of the court, has a duty to inform the court that it may be necessary for the court to inform a witness of his rights under the Fifth Amendment. Usually, a trial judge has no knowledge of the content of a proposed witness's testimony.

However, we feel it is a better practice for the prosecutor to inform the court, in the appropriate case, out of the presence of the witness, of the possible need for a witness to be informed of his or her rights under the Fifth Amendment. The prosecutor should further state the basis for such a request and the trial judge shall exercise his discretion in determining whether such warnings should issue. If the trial judge determines that such warnings are appropriate under the facts presented then the court shall inform the witness of his rights under the Fifth Amendment on the record out of the presence of the jury, if that be the case.

We feel such a practice will greatly reduce if not eliminate future accusations of prosecutorial abuse or misconduct under the circumstances herein and would further relieve the trial court of trying to mitigate or explain away undue or overzealous warnings to a witness by the prosecution and thus unwittingly or otherwise force a trial judge to overemphasize legitimate warnings, thereby transforming them into instruments of intimidation.

The prosecutor's tardy offer of use immunity to the witness does not dissipate the coercion of the witness as found by this Court. The prosecutor reserved the right to prosecute within the offer of use immunity. At the point in time that such offer was made, we do not believe that the witness would believe that use immunity would protect his rights.

The remaining errors alleged by the defendant of whether the trial judge should have *sua sponte* disqualified himself because he had decided most of the pretrial motions and, further, that the verdict was against the great weight of the evidence, will not be decided by this Court in light of the reversal of the conviction on other grounds as stated herein.

The remaining problem in this case is how to dispel the intimidation of a witness once it occurs. The Court in *People v Williams #1, supra,* left the solution to the trial court and the prosecutor with instructions that a record be made setting forth whatever steps were taken to undo the damage. Normally, this Court would not order a prosecutor to grant any form of immunity at a new trial. However, since the prosecutor had previously offered use immunity to the witness herein, and to ensure that the coercion found herein is dissipated, the witness Anthony Brown shall be given use immunity at the new trial ordered herein.

Reversed and remanded for a new trial.