Justices ADAMS and BRENNAN
concurred, opining that they
would remand to the trial court for a determination by that court as to whether or not the prosecutor’s letter did intimidate the witnesses. If the court finds it did, the court should grant a new trial and the court’s efforts to undo the damage upon such retrial should appear of record. If the court finds that no intimidation took place, the court should so find, stating its reasons for the finding, and a new trial should be denied. [Id. at 407 (opinion by ADAMS, J.).]
Thus, a plurality of the Court held in Pena that the prosecutor’s conduct had been wrongfully threatening, but that remand was required to determine whether the threats had actually intimidated the witnesses.
This Court weighed in on the subject in McIntosh, 142 Mich App 314. McIntosh focused on the prosecution’s conduct regarding witness Beverly Alexander, who testified against the defendant at his preliminary *718 examination regarding charges of armed robbery, assault, and felony murder. Id. at 322. Alexander subsequently informed the police “that she had changed her mind and would refuse to testify at trial.” Id. at 323. Shortly thereafter the prosecutor charged her with conspiracy to commit armed robbery and felony murder. Id. At McIntosh’s trial, Alexander invoked the Fifth Amendment. Id. Over a defense objection, the court declared Alexander unavailable and allowed the use of her preliminary-examination testimony pursuant to MRE 804(a)(2). Id. “In so ruling,” this Court recounted, “the court placed the burden of proving why Alexander was unavailable on defendant and refused to let the defense ask Alexander why she was pleading the Fifth Amendment because the question was ‘irrelevant.’ ” Id.
This Court framed the appellate question presented as follows: “May a prosecutor, as the proponent of prior recorded testimony, induce the declarant to invoke her privilege against self-incrimination and still satisfy the ‘unavailability’ requirements of both the Confrontation Clause and MRE 804?” Id. at 324. We began our analysis by reciting the pertinent language of MRE 804(a): “ ‘[A] declarant is not unavailable as a witness if his exemption, refusal, claim of lack of memory, inability, or absence is due to the procurement or wrongdoing of the proponent of his statement for the purpose of preventing the witness from attending or testifying.’ ” McIntosh, 142 Mich App at 324. Given this language, we concluded that “if the prosecution brought about Alexander’s failure to testify by prosecuting her with the intent of preventing her testimony, Alexander was not ‘unavailable’ and the trial court erred in admitting her preliminary examination testimony.” Id.
*719 The McIntosh Court then turned to caselaw centering on alleged violations of the Confrontation Clause stemming from prosecutorial conduct unintentionally resulting in a witness’s unavailability. Id. at 324-326. In several of those cases, courts required the prosecutor to demonstrate that the witness’s unavailability “[was] not chargeable to them.” Id. at 326 (citation omitted). This Court concluded that when the prosecution offers prior recorded testimony based on a witness’s unavailability, “the burden is on the prosecution to establish that the witness ... is, in fact, ‘unavailable’ and that the prosecution has not, either intentionally or negligently, contributed to making the witness unavailable.” Id. at 327. As to witness Alexander, the Court held that because the trial court had “improperly placed the burden of proving why Alexander was unavailable on defendant and precluded inquiry into why Alexander was pleading the Fifth Amendment, we are unable to determine whether or not the prosecution was intentionally or negligently responsible for Alexander’s becoming unavailable.” Id. The Court remanded the case to the trial court for an evidentiary hearing at which the prosecution would bear the burden of showing “that it was not intentionally or negligently responsible for Alexander’s refusal to testify.” Id. at 328.
In both Pena and McIntosh, the Supreme Court and the Court of Appeals, respectively, ordered remands for the collection of evidence regarding the cause of each unavailable witness’s refusal to appear. In the case before us, remand for an evidentiary hearing is unnecessary, as the trial court has already made the requisite finding. Based on Hoskins’s and the lawyers’ recapitulations of what occurred after Hoskins indicated his willingness to testify, the trial court determined that Hoskins invoked the Fifth Amendment *720 because “he felt threatened; that’s why he wasn’t testifying.” And because the prosecutor’s threats procured Hoskins’s unavailability, we hold that a new trial is required.
We begin by addressing the prosecution’s argument that Hoskins was merely “advised” of the possibility of prosecution for perjury and not “threatened” with such a charge. The record refutes this characterization. Despite that Hoskins was represented by counsel, the prosecutor not only invoked the specter of prosecution for perjury, he informed Hoskins that he risked incarceration “for life” if convicted. The prosecutor’s statements exceeded mere advisement and crossed into the realm of threat and intimidation.
While a prosecutor may inform a witness that false testimony may result in a perjury charge, the circumstances surrounding the prosecutor’s intervention following Hoskins’s declaration demonstrate that the prosecutor went well beyond merely “advising.” Hosk-ins had not yet offered any testimony, and whether he planned to recant his preliminary-examination statements or testify falsely was unknown. Moreover, this Court has emphasized that when a prosecutor suspects that a witness may perjure himself,
it is a better practice for the prosecutor to inform the court, in the appropriate case, out of the presence of the witness, of the possible need for a witness to be informed of his or her rights under the Fifth Amendment. The prosecutor should further state the basis for such a request and the trial judge shall exercise his discretion in determining whether such warnings should issue. If the trial judge determines that such warnings are appropriate under the facts presented then the court shall inform the witness of his rights under the Fifth Amendment on the record out of the presence of the jury, if that be the case. [People v Callington, 123 Mich App 301, 307; 333 NW2d 260 (1983).]
*721 Because Hoskins was represented by counsel, the prosecutor was under no obligation to warn Hoskins of a risk of committing perjury. Nor did the situation merit a warning, particularly as to the potential of life imprisonment, given that the prosecutor had only a hunch that Hoskins would deviate from his preliminary-examination statements. Eegardless of the prosecutor’s “tone of voice,” we find it difficult to justify the prosecutor’s “warning” given Pena’s condemnation of a letter written in the most sterile of terms relaying precisely the same information. In Pena, as in this case, the information was conveyed to coerce or intimidate rather than merely to “inform.” In Pena, an evidentiary hearing was required because the record did not reveal whether the witnesses were actually intimidated. Here, the trial court explicitly found that Hoskins refused to testify because he felt “threatened,” obviating the need for additional fact-finding.
We draw additional support for our conclusion from the New Jersey Supreme Court’s opinion in State v Feaster, 184 NJ 235; 877 A2d 229 (2005). In Feaster, a “key” prosecution witness scheduled to testify at the defendant’s postconviction relief hearing recanted his trial testimony in an affidavit provided to the defendant’s attorney. Id. at 240. Before the witness could testify, the prosecutor advised the witness’s attorney “that there would be ‘considerations’ if he testified consistent with his recantation statement.” Id. At the hearing, the witness withdrew his affidavit and invoked his Fifth Amendment privilege. Id. The New Jersey Supreme Court held that the prosecution had “substantially interfered” with the witness’s decision to testify, violating the defendant’s state constitutional rights. Id.
*722 Feaster is instructive for several reasons. First, the prosecutor in that case, as here, insisted that his warning of “considerations” did not amount to a “threat” and was not “inappropriate.” Id. at 246-247. The New Jersey Supreme Court forcefully rejected the notion that the prosecutor’s behavior was appropriate:
The State has no affirmative duty to tell a witness, subpoenaed by the defense, that he could be prosecuted if his testimony is different from his previously sworn testimony and inconsistent with the State’s theory of the case. We do not find that such warnings by the State are a pre-condition to a perjury or false swearing prosecution. In other words, a witness does not have to be told that if he testifies falsely he will be subject to prosecution.
[[Image here]]
. . . Whether the threat of a peijury prosecution is delivered conversationally, in transparently coded language, or loudly, in pointedly brash language, the effect is likely to be the same on the witness, even if the conduit is his attorney. The message to [the witness] was clear enough. We accept for the purpose of this discussion that the... prosecutor acted in good faith. Even crediting the ... prosecutor with the best possible motives, defendant nonetheless was deprived of his most essential witness at the . . . hearing.
. .. [I]t is not the function of the State to save a defense witness from himself or to spare the court a supposed falsehood, at the expense of denying the court critical testimony. To the extent possible, the ... court was entitled to the testimony of every witness. The State may think that it alone knows the truth, but it is for the court to decide the truth, after both sides have presented their cases. If falsehood is to be exposed, the State has a fair opportunity to do so on cross-examination. [Id. at 258-260.]
We find this reasoning compelling.
*723 Second, the Feaster court emphasized that the prosecutor’s “good faith” in expressing the warning did not determine whether the words were coercive. Even if the motivations of the prosecutor were pure, the court reasoned, such a warning “does not advance the truth-seeking function of a trial[.]” Id. at 261. “We have confidence that our courts and juries are capable of detecting falsehoods with the aid of the adversarial process. The State can prosecute those who commit perjury or false swearing; the State simply cannot threaten a defense witness to keep him off the stand.” Id.
We highlight that in the case before us, the prosecutor lacked any reasonable basis to suspect that Hosk-ins would lie on the witness stand. The prosecutor himself did not hear Hoskins state “I’ve got you covered, bro”; rather, the prosecutor quoted some unknown person who allegedly heard the statement (“ [I] t was brought to my attention, that as Mr. Hoskins was leaving the courtroom . . . that he made comments to Mr. Lopez and Mr. Reed to the effect that, ‘I’ve got you covered, bro.’ ”). This hearsay simply does not provide a sufficient basis for suspecting that perjury was in the offing, or for issuing a perjury warning.
MRE 804(a) provides that a witness is not “unavailable” if the party’s absence “is due to the procurement or wrongdoing of the proponent” of the testimony. We construe a rule of evidence in the same manner as a court rule or statute. Waknin v Chamberlain, 467 Mich 329, 332; 653 NW2d 176 (2002). “In general, ‘or’ is a disjunctive term, indicating a choice between two alternatives [.] ” Paris Meadows, LLC v City of Kentwood, 287 Mich App 136, 148; 783 NW2d 133 (2010). Accordingly, the definition of “unavailability” set forth in MRE 804(a) precludes a court from finding a witness *724 unavailable if the witness’s absence is “due to” either “the procurement” or the “wrongdoing” of the proponent of the testimony. Our decision rests on the trial court’s finding that the perjury warning issued by the prosecutor procured Hoskins’s unavailability.
Black’s Law Dictionary (10th ed), p 1401, defines “procurement” as “[t]he act of getting or obtaining something or of bringing something about.” “Rule 804 provides that if the unavailability was caused by the party offering the hearsay statement, the requirement of unavailability will not be regarded as satisfied.” 4 Weinstein & Berger, Evidence, ¶ 804(a) [01], p 804-36 (1985).
The trial court recognized that Hoskins refused to testify due to the prosecutor’s threat, yet the court failed to connect its finding with the rule’s command that “procurement” of a witness’s absence nullifies the witness’s unavailability. Because the prosecutor improperly silenced Hoskins, the court was required to exclude Hoskins’s preliminary-examination testimony in the first instance, or to strike the testimony from the record thereafter. By admitting prior testimony in clear violation of the evidentiary rules designed in part to protect a defendant’s right to confront the witnesses against him, the trial court abused its evidentiary discretion and violated Lopez’s fundamental right to a fair trial. This error was far from harmless. The prosecutor asserted during his closing argument, “[W]hat this case boils down to is the testimony of Dennis Hoskins.” Our review of the record confirms that aside from Hoskins’s testimony, the evidence against Lopez was thin at best. The prosecutor correctly concluded in closing that “[I]t’s Mr. Hoskins’[s] testimony that signs, seals, and delivers only one conclusion, and that’s that the *725 defendants who are sitting here today are guilty.” Therefore, we must vacate Lopez’s convictions and sentences.
On retrial, Hoskins may elect to testify. If he maintains his silence, his preliminary-examination testimony may not be presented to the jury.
We vacate Lopez’s convictions and sentences and remand for a new trial at the prosecution’s discretion. We do not retain jurisdiction.
Stephens, P.J., and Servitto and Gleicher, JJ., concurred.